## Case No. 4,277.

### EDDY STREET IRON FOUNDRY v. HAMPDEN STOCK & MUT. FIRE INS. CO.

[1 Cliff. 300.][1]

Circuit Court, D. Rhode Island. June Term, 1859.

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

T. A. Jenckes, for plaintiffs.
C. S. Bradley, for defendants.

CLIFFORD, Circuit Justice. None of the instructions given by the court are the subject of complaint, nor are they reported on the motion for a new trial. Under the circumstances, it must be assumed that they were correct. Had the instructions given been reported, there would be much less difficulty in determining whether the requests offered .by the plaintiffs were properly refused. Without the means of comparing the one with the other, some reference to the facts of the case becomes indispensable, in order that the precise nature of the questious presented may be clearly understood. No change was made in the terms and conditions of the policy, or in the description of the property insured, from the time the policy was made and issued, to the time of the loss. When the period for which it was first given had expired, it was extended without any alteration of its terms, and upon the express condition that the application upon which the policy was originally predicated should continue valid and in force. These remarks apply to the second extension as well as the first, so that the rights of the parties in this controversy depend upon the true construction of the policy when taken in connection with the original application. Some discrepancy exists as to the articles of property insured, and as to the distribution of the amount of the insurance between the policy and the application on which it is founded; but that discrepancy does not affect any question now presented for decision. Insurance was in fact made to the amount of fifteen hundred dollars, as follows: one hundred and fifty dollars, on stock manufactured and in process; seven hundred and fifty dollars, on tools and flasks; six hundred dollars, on fixtures, cupola, and patterns, situated in rear of 82 Eddy street, Providence. At the argument it was agreed that the loss, consisting chiefly of patterns, was confined to property contained in a storehouse situated on the premises of the plaintiffs, and that the property was not contained in the furnace building, situated in rear of No. 82 Eddy street. On both sides, it was conceded that the furnace building, specified in the application, is situated directly in the rear of No. 82; and it appeared at the time, that the storehouse which contained the property lost was separate from the furnace building, and would be well described as situated in rear of Nos. 82 and 84, on the same street, and would not be properly described as situated in rear of No. 82. Nothing can be more certain than the proposition that the policy, under the circumstances of this case, must be read in connection with the application which forms a part of it, and when so read, it is equally clear that, by its true construction, it describes the property insured as all contained in the furnace building. That conclusion rests upon the express statements of the answers to the second and third interrogatories in the application, and upon the admitted fact that the true description of the furnace building corresponds to the one circumstantially given in the answer to the third interrogatory. From the course of the argument, it was also conceded that the situation of the furnace building is correctly described in the policy as in rear of No. 82, and it was not controverted that the description of No. 82, as given in the answer to the second interrogatory of the application, is correct. By the terms of the policy, the insurance was predicated upon the application, which is expressly declared therein to be a part of the policy. Twelve interrogatories were propounded to the applicants, all of which were duly answered. Of these, three only of the questions and answers need be given: Interrogatory One. State the character and kind of property to be insured. To which the applicants answered as follows: Cupola, furnace, stocks, tools,▲ fixtures, flasks, engines, and patterns. Interrogatory Two. Where is it situated? Answer. In the. rear of new stone and brick building on Eddy street, Providence. Interrogatory Three. Of what materials is the building constructed; age, size, height, and condition, and for what purpose occupied, and by whom? Answer. Brick; attic, wood; slate roof; new, one story high, no floor; .furnace by applicants. Those questions and answers, when taken in connection with the terms of the policy, make it clear, we think, that the property insured was understood by the parties to be contained in the furnace building. When parties have deliberately put their engagement into writing, in such

terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, says Mr. Greenleaf, that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing, and parol evidence is not admissible to vary, enlarge, or contradict the terms of such an instrument. Construction can go no further, even in cases of doubt, than to ascertain the real intention of the parties; and that intention must be collected from the language employed as applied to the subject-matter and the surrounding circumstances. Every writing undoubtedly where the language is doubtful may be read by the light of the surrounding circumstances, in order more perfectly to understand the true intent and meaning of the parties; but as they have constituted the writing to be the only outward and visible expression of their meaning, no other words are to be added to it, or substituted in its stead. 1 Greenl. Ev. §§ 275–277. Every written instrument, as a general rule, must be construed by the court, and not by the jury. That rule is so firmly established, that it would be quite out of place to cite authorities in its support. It has certain exceptions and qualifications, but none of them have any application to the present case.

Having ascertained the facts of the case, so far as necessary in this investigation, we will now proceed more immediately to the inquiry, whether the instructions requested were properly refused.

Certain principles in the law of fire insurance have become too well settled to be any longer the subject of dispute. Parties to a policy of insurance may agree as to the materiality of the statements of the applicant, and such agreements, if made a part of the contract, will be respected by courts of justice. Accordingly, when the policy contains a clause declaring that the application forms a part of the policy, it thereby becomes a part of the contract, and all the material statements in the answers of the applicant are thereby changed from representations into warranties. In such a case the application is to be taken as a part of the contract of insurance in the same manner as it would be if incorporated into the policy itself. Battles v. York Co. Mut. Fire Ins. Co., 41 Me. 208; Burritt v. Saratoga Co. Mut. Fire Ins. Co., 5 Hill, 188; Jennings v. Chenango Co. Mut. Ins. Co., 2 Denio, 82; Smith v. Bowditch Mut. F. Ins. Co., 6 Cush. 449; Sillem v. Thornton, 26 Eng. Law. & Eq. 238; Hayward v. New England Mut. F. Ins. Co., 10 Cush. 444; Wilbur v. Bowditch Mut. F. Ins. Co., Id. 488; Wellcome v. People's Equitable Mut. F. Ins. Co., 2 Gray, 480.

Representations are collateral statements of facts incidental to the contract; but a warranty is a stipulation forming a part of the contract, and is construed as a condition.

All statements contained in the policy itself are prima facie warranties, while extraneous statements are in general regarded merely as representations, even when made formally in writing, and in answer to written or printed questions propounded by the insurers. Such statements, when not introduced into the policy, are ordinarily regarded as collateral to the contract, but they may undoubtedly, according to all the authorities, be incorporated with it by agreement, and then they cease to be mere representations, and become warranties. Mere reference to a representation, in a policy of insurance, will not necessarily make it a part of the contract, or render it absolutely binding on the insured; for the intention may, and sometimes will, be presumed to be, to put its existence as a representation beyond question, and not to give it another and more unfavorable character. Gates v. Madison Co. Mut. Ins. Co., 3 Barb. 73, 2 Comst. [2 N. Y.] 43, and 1 Seld. [5 N. Y.] 469. But when the representations of the insured are expressly referred to in the policy as forming a part of the contract, they will acquire the character of warranties, and invalidate the insurance, unless strictly complied with, whether they are or are not material to the risk assumed by the insurer. Williams v. New England Mut. Fire Ins. Co., 31 Me. 219; Jennings v. Chenango Co. Mut. Ins. Co., 2 Denio, 75; Murdock v. Chenango Co. Mut. Ins. Co., 2 Comst. [2 N. Y.] 210; Lee v. Howard Ins. Co., 3 Gray, 592. Even when the reference to the statements of the insured is not such as to render them warranties, as when they are expressly referred to as representations, it will still be prima facie, if not conclusive, evidence of their materiality to the risk, and render any misrepresentation or concealment in making them fatal to the right of recovery against the insurer. Houghton v. Manufacturers' Ins. Co., 8 Metc. [Mass.] 114; Burritt v. Saratoga Co. Mut. Ins. Co., 5 Hill, 82; Vose v. Eagle Ins. Co., 6 Cush. 42; Davenport v. New England Ins. Co., Id. 340; Glendale Woollen Co. v. Protection Ins. Co., 21 Conn. 19.

Evidence to show a misrepresentation or a concealment must be submitted to the jury, and in general the question whether the misrepresentation or concealment was material or not is an inquiry of fact, and not of law. Livingston v. Delafield, 1 Johns. 522; Walden v. New York Firemen's Ins. Co., 12 Johns. 138.

None of these principles, however, precisely touch the questions involved in the motion. What we have to determine in this case is, the construction of the contract, which in point of fact has nothing to do with any question of misrepresentation or concealment. By the terms of the policy, when read in connection with the application which forms a part of the policy, it appears that certain property therein described as contained in a given building, was insured. That building was situated on the premises

of the plaintiffs, and not only contained property of the description mentioned in the policy, but was owned and occupied by the plaintiffs for the purposes described in the application. Place and situation, therefore, as given in the application, constituted an essential element in the description of the property insured; and as that description is a part of the contract, it was necessarily material, for it was the property so described, and no other, that was included in the risk. No one, we presume, will contend that all the property of that class owned by the plaintiffs, without regard to place or situation, was included in the policy. Such a construction of the contract would be both unjust and unreasonable, and therefore cannot be adopted. If it be admitted that the terms of the contract are not broad enough to include all such property of the plaintiffs, then there is no other sensible construction which can be adopted consistently with the language employed, except the one which restricts its meaning to the property contained in the furnace building as described in the application. To suppose that the policy covered all such property of the description mentioned as was situated on the premises of the plaintiffs, would be to make a new contract for the parties, instead of expounding the one they have made for themselves, as there is not a word either in the policy or application which authorizes any such construction. Having come to this conclusion as to the construction of the contract, it necessarily follows that the several prayers for instruction were properly refused.

Motion overruled.