## Peterson v. The Miss. Valley Ins. Co.

Insurance: ON LIVE STOCK. A policy of fire insurance described the property insured as follows: "On his dwelling house $400; grain in stack or crib $600; hay in stack $320; seven horses $750; cattle $275. Situated section 22, town 99, R. 7 west." The policy contained this condition, "if the risk be increased by the erection of adjacent buildings, or by an other means without the assent of the company, the policy shall become void." The assured, a farmer, while hauling his grain to market stopped for the night at a hotel, and put his team in the hotel barn in which the property was more exposed to fire than in its use on the farm of the assured. During the night the barn was destroyed by fire, and with it one of the horses of the assured. No assent of the company had been given to the use of the property off from section 22. *Held*, that the company was liable, and that the risk assumed by it was not limited to the use of the team on section 22, but extended to the usual and ordinary use of it, whether on the farm or temporarily absent therefrom.

*Appeal from Winneshiek District Court.*

WEDNESDAY, MAY 13.

INSURANCE: CONSTRUCTION OF POLICY, ETC. — The defendant insured the plaintiff against loss or damage by fire and lightning for the term of five years, from July 21, 1865, on property described in the policy thus: "On his dwelling house $400; grain in stack or crib $600; hay in stack $320; seven horses $750; cattle $275. Situated section 22, town 99, R. 7 west."

In the application for the insurance (which is made a part of the policy) the property is described as follows:

On his dwelling house, valuation $600; sum insured, ................................... $400
On his grain in stack or crib, sum insured, ....... 600
On his hay in stack, sum insured, .............. 320
On his seven horses, sum insured, .............. 750
On his cattle, ................................... 2,750

The answers to special questions in the application as to the property relate principally if not alone to the dwelling house, stating its situation to be in "section 22, T. 99, R. 7;" its size, how occupied, lighted, etc., etc.

The policy contains this condition: "If the risk be increased by the erection of adjacent buildings, or by any other means whatever, without the assent of the company, the policy shall become void." The plaintiff was a farmer, and it was admitted, that on the 27th day of January, 1867, while he was in the ordinary pursuit of his business, engaged in hauling his grain to market, he stopped over night at the Tremont house, in Decorah (not situated on said section 22), and put his team (part of the seven horses insured) into the hotel barn. During the night the hotel and barn were destroyed by fire, and with them a mare

Peterson v. The Mississippi Valley Ins. Co.

worth $170, belonging to the plaintiff's said team. For the loss of this animal, the present action is brought.

There was evidence tending to show that property in the barn of the hotel was more exposed to loss by fire than in its use on the farm. It was not claimed by the plaintiff, that the company had assented to the use of the property off from section 22.

The company defended on the ground, that they were not liable for such loss inasmuch as the risk had been increased, and the loss occurred when the mare was not on the said section.

The court instructed the jury as follows: "There is no express provision in the policy, and the law will not imply one, limiting the plaintiff's use and the defendant's liability to section 22, T. 99, R. 7. If you find from the evidence, that plaintiff came to town temporarily to stay over night, and put his mare at a hotel barn according to the usual custom of farmers, and exercised such prudence in selecting a safe barn as a man of ordinary prudence would have done, he is entitled to recover."

To this the defendant excepted.

In addition the court charged:

"If, on the other hand, plaintiff placed his mare in a stable so exposed to fire, that a man of ordinary prudence would not have selected it to put his horses in over night, you will find for the defendant."

The jury returned a verdict for the plaintiff, who had judgment accordingly, and the defendant appeals. The error relied on is the charge to the jury above copied.

*E. E. Cooley* for the appellant.

*L. Bullis* and *R. Noble* for the appellee.

Peterson v. The Mississippi Valley Ins. Co.

DILLON, Ch. J. — This is an action on an ordinary *fire* policy. It is, of course, to have a reasonable construction.

INSURANCE : on live stock. The policy and application are in the usual form. It is evident from reading the policy and the numerous conditions it contains, that it is specially designed and adapted for buildings and the contents of buildings, and not for live stock. It is plain, that there is, as charged by the court, "no *express* provision in the policy limiting the plaintiff's use of the property to section 22."

The only claim on the part of the company, that there is such a limitation, is based wholly upon the description of the property insured, as contained in the policy and the application. The description will be found in the statement. In our judgment the language there used is intended to describe the situation — the location — of the property, and not to limit the use of the horses to the section of land therein mentioned.

Is there an implied restriction, in the policy, of the use of the horses, to the section named? We think not, because such a limitation would be unreasonable.

In effecting this insurance, and paying the company for the risk it assumed, it cannot be supposed that the plaintiff was to be deprived, upon the peril of forfeiture of his policy, of the ordinary and beneficial use of the property insured. The insurance extended through five years. Is it to be supposed, that every time the plaintiff had occasion to go off of section 22 to church, to mill, to market or for fuel, he should go to the city of Decorah and get "the assent of the secretary of the company indorsed thereon"? It may be said, that the plaintiff could procure a general assent from the company. But how can it be known, that the company would give it? If the company had told the plaintiff at the time of taking the risk, as they now assert is the case, that every

time your team passes the boundary of section 22, it passes out of the protection of the policy and renders it void, he would hardly have agreed to pay his money for such an insurance so precarious. If defendant's view be correct, the plaintiff could not have recovered if his horse had been killed by lightning while he was on his way to obtain the company's consent, provided he did not happen to be upon section 22 at the time.

Confining the opinion expressed to the precise case before us, and to the precise character of the property for the loss of which the action is brought, there being in the policy no provisions other than those before referred to applicable to the question of defendants' liability, we concur in holding, that the risk assumed by the company was not necessarily limited to the use of the plaintiff's team on section 22, but extended to the usual and ordinary use of the team, whether on the farm or temporarily away from it. To hold otherwise would be scarcely less unjust to the plaintiff than disastrous in its tendency to insurance companies. If they could escape liability on such defenses, the business of insurance would soon fall into popular disfavor and merited odium. In holding insurance companies liable in cases like the present, we are, whether they will believe it or not, promoting their best interests, as well as guarding those of the public upon whose patronage they are entirely dependent.

Confidence in the companies, without which they cannot live, will indeed be a plant of slow growth in the public mind, unless that confidence is deserved.

The learned judge did not err in the directions given to the jury, and the judgment is

Affirmed.